All right, case number two is USAA Savings Bank v. Goff, appeal number 25-1730. Hold on for a minute, Mr. Schultz. Let's make sure everyone gets settled here. Me as well, Your Honor. Okay, Mr. Schultz, whenever you're ready. Good morning, and may it please the Court. I am Ted Schultz, representing USAA Savings Bank, which appeals an August 2023 arbitration decision, against it awarding $0 in actual damages but $10,000 in punitive damages and $77,000 in attorney's fees. This is a case about an arbitrator ignoring the express contractual limitations in the arbitration agreement as to their authority. The arbitration agreement here specifically states that the arbitrator has a limit on their authority, meaning that if the arbitrator has made a punitive damages award, the arbitrator must conduct a post-award review. That post-award review applies the same standards for the first time in the arbitration, as would be applied in the state where... Mr. Schultz, can I ask you, if we reverse here, what's the remedy? The remedy is that the arbitration must take place again. Based on what? Why wouldn't your client just be entitled to the review of the punitive damages award? Because the arbitrator has stated that they do not believe that they have the authority to do so. But what if we said they do? Then wouldn't your client just be entitled to that review? In other words, would the re-hearing just be that the arbitrator was required to conduct the post-award review? The arbitrator... I know you don't want that, but why would that not be the remedy? Why wouldn't we just send it back for... Because she already did that, kind of. Respectfully, I disagree that she has done the post-award review, kind of. I don't believe she's done a post-award review at all. No, she didn't do it at all, but the point is, you made arguments against punitive damages. And I understand maybe you would make... She comes out with the punitive damages award, and if there was a post-award review, you would have filed a new brief, which would have made additional arguments against punitive damages. That's correct. So if we reverse, why wouldn't we just reverse for this arbitrator or another arbitrator to conduct that post-award review? Why would we start all over again? The problem is, Your Honor, that there is no mechanism under the AAA, according to this arbitrator. She has said, I have no power to do so under the AAA rules. If you find that the arbitrator has committed error, and that she has applied the wrong rules, as we believe she has, because she has not complied with the arbitration agreement, there's no way to re-empower her, to force her to come back. You could ask for a different arbitrator, but if it was a different arbitrator, then under the arbitration agreement, the same arbitrator is supposed to hear the entirety of the arbitration. Not that one arbitrator hears one part, and another arbitrator hears another part. There's no easy way for this court to assert jurisdiction over the arbitrator and say, you must now do this one other part for us. It's not like the other arbitration cases that are common to this court, where there's an ongoing business relationship, a union and a business. And because of that, there's ongoing arbitrations. This is a one-off arbitration of this dispute. You cannot reopen it and force the matter back. At the most basic level, I do not believe you have the authority to simply order the arbitrator. What if she refused? What would you do then? Mr. Schultz, this clause that is in dispute here, does your client have this in all of its arbitration agreements? Yes, it does. At least so far as I know. Has it ever been litigated before? This particular issue has never been litigated before. This arbitration clause was added in 2021. I must say, I do not know what the prior arbitration clause stated at the top of my head, but I believe that it was very, very similar. Does the record contain any articulation as to why your client wants this clause in its arbitration agreement? The record does not, but I believe that it's absolutely clear why we would want it. Having a post-award review gives us a bifurcated process. We would prefer in the arbitration to argue at first the merits and not focus on punitive damages. And then if there is an initial award, we would want to try it again. We want to try the issue of punitive damages and argue about punitive damages and why they may or they should or should not be awarded. We don't want those two things together. That's the whole purpose of splitting this up like any other bifurcation. As I understand your opponent, their view is that, well, damages are all going to be mentioned during the merits inquiry in any event. Clearly, the arbitrator took into consideration punitive damage because she awarded them with the initial award. So really, this whole thing is rather pointless. Respectfully, I disagree, Your Honor. I don't think it's pointless at all. If the first part of the arbitration deals specifically with the merits and the second part is dealing with the specific issue of punitive damages, and very appropriately, the punitive damages award is subject to a different choice of law. The initial damages award and the initial hearing is held under a standard where anything under the FAA, that means any federal or state opinion, would be relevant. But here, at the punitive damages level, it's a different analysis. Mr. Schultz, if I could ask you about that. The credit card agreement says that the governing law is Nevada, right? That is correct. And so the arbitration addendum says the arbitration addendum is part of the credit card agreement. That is also correct. Right. And so how do you square the choice of law in the credit card agreement with your argument now that the addendum, which is part of the credit card agreement, is now governed by some other choice of law provision? Certainly. The arbitration addendum specifically says what laws the arbitrator must use in rendering their decision. And so does that then, that trumps the specific language in the agreement itself that says the agreement is governed by Nevada law? But the overall agreement being governed by Nevada law doesn't obviate the specific points of this dispute will be governed by the place of where the arbitration is or by general FAA rules. And along those lines, looking at paragraph 8.13 in your agreement, it says with regard to this post-award review, before the decision becomes final, the arbitrator must also conduct a post-award review. As I understand the record here, here the arbitrator issued an interim award. That is correct. And then later did a final award. Between the interim award and the final award, did your client request the arbitrator to review the punitive damages award? No, Your Honor, we did not. We followed what the arbitrator said. The arbitrator said, here's our initial award. Did you tell the arbitrator, well, you know, actually under 1.13, it says before the decision becomes final, we're entitled to a review of punitive damages. Did you raise that before the arbitrator? No, because we didn't know that a final award was coming until the final award was entered. Didn't she ask, but I guess I don't understand. She, maybe I'm not clear on the timing of things. I thought there was an interim award. She requested additional briefing on attorney's fees. She issued a final award. And it was after that that you asked for a review of the punitive damages award. That is exactly correct. And what I mean by we didn't know that it was coming is, we had no way of knowing that the final award was going to be issued without her conducting this post-award review that was supposed to occur. Before that final award was issued. There's no way we would know. Well, did you bring it to the arbitrator's attention? It's self-executing, Your Honor. No, we did not because we expected that that was going to occur. That's what the arbitration agreement calls for. We wouldn't think that we have to remind the arbitrator that she needs to follow the arbitration agreement because that's specifically the source of all of her power. Well, I guess, you know, if I were the arbitrator, I would look at this and say, okay, well, you know, before a decision becomes final, they have an opportunity to ask for a post-award review of the punitive damages they haven't. So I guess I'm going to release my final award. Respectfully, though, the language says that she must conduct the post-award review. It doesn't say that we have to ask for a post-award review. And we certainly didn't know that she was going to suddenly issue the order. As a matter of fact, what I suspected was going to happen when we filed our motion to reconsider that final order was very simple, was that she would say, oh, you're right, I should have conducted this. I will conduct the review now. That couldn't have been the final order. But instead, what she said was, no, under the AAA rules, I can't issue a post-award review. I won't do so. At that point, we have lost the ability to have this. Okay. And you say that that's not her interpreting the agreement, you know, saying that the AAA rules trump the arguments that you're making, but that despite the fact that you brought this provision to her attention, she merely just completely ignored it. She ignored it, yes. There's a big difference in your case law between ignoring an arbitration agreement and interpreting it. And this one clearly falls on the line of ignoring. What if she had added a sentence in the award saying, you know what, they make this argument, I don't agree with it because I don't think the contract calls for that? Would that be ignoring or would that be interpreting? Under U.S. soccer, I believe that that would fall within the making noise of interpretation exception, but would not be a true interpretation. But if I may, if she had said, I have performed the review and I find under the Seventh Circuit that these punitive damages are fine. No, no, no. What if she says, you know what, I've read the 1.13 and I've read the AAA rules, and so I think that the AAA rules, I disagree with the position and I believe the AAA rules trump, and so I'm not going to go back and conduct this assessment. I mean, she's wrong, but... But not only is she wrong, Your Honor, if she were to do that, I believe that what she would have accomplished is she would not be interpreting. She would simply be ignoring. She would be as happened in Tootsie Roll. She would simply be saying, no, I'm going to apply this rule. I don't care what the arbitration agreement says, and that would be a violation. Your Honor, I note that I am cutting into my time. May I reserve? Sure. Thank you kindly. Okay, Mr. Dower. Good morning, Your Honors. May it please the Court. My name's Alexander Dower. I'm here for the appellee, Michael Goff. I'd like to begin with the line of questioning that you were exploring there, Judge Lee, as pertains to the sort of timeline and the interim award, and I'm at page 26 of the short appendix here, and I'll note that in the interim award, and that interim award issued on July 7th, 2023, the arbitrator asked, called for, briefing as to fees and costs and said, upon and after such submissions, the matter shall be deemed submitted to the arbitrator for determination in a final award. It was very clear to the parties what the only remaining issue was in the arbitrator's eyes, and that was the issue of fees and costs, which had been explicitly bifurcated for sort of obvious reasons, no sense in briefing fees and costs if plaintiff, or claimant doesn't prevail. And so this suggestion that USAA was somehow caught off guard, I just don't think the record supports that interpretation. Are you suggesting, then, that that was the post-award review? I don't think that it voids the post-award review. No, no, no, I said that it was. Was there a post-award review, or was there not? I would submit that there was a post-award review here, Your Honor, and... When did that occur? I believe it would have occurred in between the interim award and the entry of the final award, and that post-award review wasn't explicit, but was a reaffirmation of the interim award. And then I think there was a subsequent additional post-award review when USAA made all of its arguments in its request for review on September 14th, and there was a denial. The arbitrator did word its ruling as a denial, but the arbitrator explicitly reaffirmed, that's the word that's used in that denial, I reaffirm the awards, and that was the ruling on September 19th. But then I'll note that there is that passage of time, so it's not as though this was a knee-jerk, the arbitrator looked at it and said, no, I'm not going to do anything. The arbitrator received that request, had it for five days, and then issued its short-reasoned decision as pertains to the requested review. And then as for the review itself, I'd like to note, I think, a portion of this provision in the arbitration provision that is sort of being glossed over here by USAA, and that is that there is an entitlement to a post-award review of punitive damages allowing the parties the same procedural rights that would be permitted in state court where the arbitration was held. I'm not familiar with a procedural right to a post-punitive damages award review that exists in the state courts of Illinois. And so I would submit that what USAA is asking for here actually doesn't even exist. I understand what they were perhaps expecting, that we would have a separate round of briefing as pertains to the propriety of the punitive damages award, but I'm not aware of any procedural right that exists, that encompasses such a mechanism in the state courts of Illinois. And so I would submit that there wasn't, to the extent there wasn't a post-punitive damages award review, that that's entirely consistent with the arbitration provision, and that's where I actually disagree with the district court's finding that something did not happen that should have happened. And I've asked repeatedly throughout the briefing and brought this up several times, for USAA to point to this procedural right that they would enjoy under Illinois law that they contend they were denied. And I haven't seen that, and I would submit that it doesn't exist in the state courts of Illinois. Do you agree with Mr. Schultz regarding the remedy if we were to reverse? I don't agree, Your Honor. I believe that, and we're going a little bit out of the briefs, and I know the circuit rules on quoting or citing to materials that's not in the briefing, so I hope you'll indulge me on it. But under the consumer rules of the American Arbitration Association, an arbitration can proceed consistent with an order from a court. And so I would submit that if you were to reverse, the remedy would be to reverse to the district court for an order to issue from the district court to conduct this additional punitive damages review. And the AAA would be, that would be well within AAA's grant of authority under, I believe it's Rule 1 of the AAA consumer rules. I think some circuits say even that the district court can conduct the review. That's right, Your Honor. And I would submit that at this point now where we are more than two years after a final award, that anything that we could do to shorten this procedure would be most consistent with this arbitration provision that the appellant includes in its contract of adhesion that brings us here today. If the panel doesn't have any other questions as to the substance of the appeal itself, I would like to speak very briefly to my request for sanctions. This case comes before the court on an underlying Equal Credit Opportunity Act claim. That's a claim that has a fee-shifting provision. Obviously, we have fees that are at issue. I cited at length in my motion the supporting case law from this court that I believe supports sanctions. I would simply note that if there is not an award of sanctions in a case like this, then what we've established is a sort of framework whereby a large institution can circumvent, or at least dramatically dilute, the remedies available to consumers under these federal statutes. Mr. Jarr, this is an odd set of facts. Your client has no damages, received $10,000 in punitive damages and $77,000 in attorney's fees, and you're asking for sanctions. That's a bold request. I am, Your Honor. That's a very bold request. I understand, Your Honor. It is, unfortunately, or maybe unfortunately is the wrong word to use there. It is oftentimes the reality when it comes to these type of fee-shifting statutes. We don't often issue sanctions even in near frivolous appeals. I understand, Your Honor. I don't think this is anywhere close to frivolous. I would submit, though, that what the court is hearing are arguments that have been raised to the district court, and simply being repeated. That happens all the time. Were you here for case number one? I was, Your Honor. I was. But I would submit that there is, and we've cited this in our brief, so I won't belabor the point, but that there is substantial case law, specifically when we're talking about the arbitration context, where sanctions are more merited, shall we say, from this court, specifically because, as is playing out here, what's been denied is the speed and efficiency of the arbitration process. And that's where sanctions is merited. Hearing no other questions, I'll rest on our briefs. Okay. Thank you, Mr. Darr. Thank you. Mr. Schultz, anything else? Very briefly, Your Honor. A few items. Looking at Essay 26 from the short appendix, it says, Upon after such submission, this matter shall be deemed submitted to the arbitrator for determination of the final award. There's nothing in there that says the matter is closed. I'm not going to have any more hearings. The determination of the final award is what we're expecting. To suggest that this is the written decision that is required on the post-award review, that doesn't make sense. And everything after, every written document after, submitted by the arbitrator, doesn't conduct a written, reasoned explanation of her decision. There's nothing in there that says, I have looked at this, and I am issuing the opinion because, instead, all there is is a simple statement of, no, that's my final judgment. That being the case, she has not complied with the specific requirements of the arbitration agreement. If the arbitration agreement is supposed to matter, and it's supposed to matter because it is the source of all of her power, then she has to comply with it. Under 9 U.S.C., I'm sorry, under 9 U.S.C. 10 A.4, if she's exceeding her authority, which is exactly what she's doing here, then, in fact, the court must vacate. With regard to sending the matter back to arbitration, I am much less sanguine about the arbitrator agreeing to perform this, and what the court will do if the arbitrator simply does not perform it. In other words, how will we know that the arbitrator will do this? What we're supposed to have is an arbitration agreement where we have a bifurcated process. We didn't get that. And trying to build it now in with an arbitrator who may or may not be willing seems like a very, very difficult task to me. Mr. Schultz, do you have a response to Mr. Dar's argument that on its face 1.13 does not provide you with the type of post-final award review that you are seeking here? Yes. It's in my response brief, and I deal with it. The language of the arbitration agreement very specifically says that we're supposed to have the same federal protections as would exist in a state proceeding in the state of arbitration. What I've done is I've cited a number of cases, both federal and state, all of which have post-hearing rules. In other words, what you are able to do is file for file briefs, at the very least, a motion to reconsider in federal court under Rule 59, and we would be entitled to the same protections as would be in that. Thank you. I thank you for your time. Thank you, Mr. Schultz. The case will be taken under advisement.